1  CHRIS BAKER, State Bar No. 181557
   cbaker@bakerlp.com
2  DEBORAH SCHWARTZ, State Bar No. 208934
   dschwartz@bakerlp.com
3  BAKER CURTIS & SCHWARTZ, P.C.
   44 Montgomery Street, Suite 3520
4  San Francisco, CA 94104
5  Telephone: (415) 433-1064
   Fax:  (415) 366-2525

6

7  Attorneys for Plaintiff
   ADRIAN MORRIS

8

9
                    IN THE UNITED STATES DISTRICT COURT
10
                    FOR THE NORTHERN DISTRICT OF CALIFORNIA
11

12

| ADRIAN MORRIS, on behalf of herself and all others similarly situated, | Case No. |
|---|---|
| Plaintiff, | **CLASS AND COLLECTIVE ACTION** |
| vs. | **COMPLAINT** |
| FIDELITY INVESTMENTS, a legal entity of an unknown form, FMR LLC, a Delaware Limited Liability Company, FIDELITY BROKERAGE SERVICES LLC, a Delaware Limited Liability Company (collectively "FIDELITY"), | **(1) OVERTIME UNDER THE FLSA**<br>**(2) OVERTIME UNDER STATE LAW**<br>**(2) CALIFORNIA LABOR CODE 226**<br>**(3) WAITING TIME PENALTIES**<br>**(4) UNFAIR BUSINESS PRACTICES** |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiff Adrian Morris, on behalf of similarly situated former and current employees, complains as follows:

**INTRODUCTION**

1. Plaintiff brings this action against Defendants Fidelity Investments, FMR LLC, and Fidelity Brokerage Services LLC (collectively "Fidelity") to recover damages, restitution, penalties and other appropriate relief.  Specifically, Fidelity does not include all of its non-exempt

COMPLAINT

employees' compensation in calculating the regular rate of pay for overtime purposes under either state of federal law.  Fidelity also does not provide its employees with wage statements that comply with California law, making it exceedingly difficult to determine if Fidelity has paid employees in accordance with the law.  As it turns out, Fidelity has not.

2. Plaintiff brings this action pursuant to the Fair Labor Standards Act, the California Labor Code, and the relevant IWC wage orders.  As a matter of right, Plaintiff will amend this Complaint to allege additional claims under the Private Attorneys General Act of 2004 ("PAGA"), Labor Code Section 2698 *et seq.*, upon the expiration of the appropriate notice period.

## PARTIES

3. From approximately August 2015 to September 2017, Plaintiff <u>Adrian Morris</u> worked for Fidelity as a Financial Representative at Fidelity's Marin, California Investor Center.

4. On information and belief, Defendant <u>Fidelity Investments</u> is a privately-held multinational financial services firm.  It has offices in Northern California, including Marin County.  Plaintiff is currently unaware of its legal form.

5. Among other things, and according to its website, Fidelity Investments (which also goes by Fidelity):

   a. Provides financial planning and retirement options such as IRAs, annuities, and managed accounts; brokerage and cash management products; college savings accounts; and other financial services for millions of individual investors;

   b. Works with employers to build benefit programs and provides recordkeeping, investments, and administrative services for employer offerings.

   c. Provides investment products, brokerage, and trading services to financial firms.

   d. Provides other asset management services to large financial firms.

Among other things, Fidelity has more than $6,000,000,000,000 (trillion) in assets under management.

6. On information and belief, Fidelity Investments employs more than 40,000 employees, thousands of them on an hourly basis.

7. Fidelity Investments hired and employed Plaintiff. Plaintiff's offer letter came from Fidelity Investments and the policies that governed the terms and conditions of Plaintiff's employment are identified as "Fidelity Investments" policies.

8. Defendant FMR LLC is a privately-held multinational financial services firm organized under Delaware law and headquartered in Massachusetts. FMR has offices in Northern California, including Marin County. FMR LLC is identified as Plaintiff's employer in Fidelity's offer letter to Plaintiff. Plaintiff also signed an "employment agreement" with FMR LLC. FMR LLC describes itself as a "holding company" in its Statement of Information on file with the California Secretary of State.

9. Defendant Fidelity Brokerage Services LLC is likewise organized under Delaware law and has the same corporate headquarters as FMR LLC. Fidelity Brokerage Services likewise has offices in Northern California, including Marin County. Fidelity Brokerage Services LLC appears on Plaintiff's wage statements as her employer. Moreover, Plaintiff's offer letter from Fidelity Investments stated that she would "join Fidelity Brokerage Services LLC" as a Financial Representative.

10. Defendants are an integrated enterprise, single employer, and/or joint employers of Plaintiff and the putative class members. On information and belief, all of the Defendants are headquartered in the same address in Boston, Massachusetts; Defendants have interlocking directors/members and executives; and Defendants exercise common control over labor relations.

11. At all times mentioned herein, Defendants were the agents or representatives of each other defendant and were acting with the knowledge and consent of each other defendant and within the purpose and scope of such agency or representation in doing or failing to do the things alleged in this complaint.

**JURISDICTION & VENUE**

12. This Court has jurisdiction over Plaintiff's claims. Plaintiff seeks relief under the Fair Labor Standards Act as well as state law.

13. The Northern District of California is the appropriate venue for this case. Defendants do business in the Northern District of California and Plaintiff resides in the Northern District of California.

## GENERAL PURPOSE OF OVERTIME LAWS

14. Federal and California law requires premium pay for overtime work. By increasing the cost of overtime, these laws: (1) discourage employers from requiring employees to work long hours (because of the increased cost of such hours); and (2) encourage employers to decrease unemployment by hiring more employees.

15. When employers unlawfully underpay their employees – by failing to include all compensation when computing an employee's overtime rate of pay, for example – they violate these laws and frustrate their express purpose. By unlawfully reducing their overtime rate, they reduce the cost of requiring employees to work long hours and they limit their need to hire additional employees.

16. This is what Fidelity has done here.

## FIDELITY'S COMPENSATION TO NON-EXEMPT EMPLOYEES

17. On July 15, 2015, Fidelity offered Plaintiff a job as a "Financial Representative." This was a non-exempt role. Plaintiff was initially paid $45,000 a year. Her hourly wage was $21.634615 an hour. Plaintiff was paid every other week. Like other Fidelity non-exempt employees, Plaintiff regularly worked overtime, which was recorded on her wage statements.

18. In an effort to compete for and retain its non-exempt employees, Fidelity provides them with certain compensation in an addition to an hourly wage. More specifically:

*Bonuses & Base Comp Retro*

19. Fidelity pays its non-exempt employees at least two types of bonuses that are specifically identified on their wage statements as (1) "Bonus Elig – NAJ" and (2) "PrYr BonEli-OT-Retro." Fidelity also pays its employees something called "Base Comp – Retro."

20. "PrYr BonEli – NAJ" is apparently earned once a year and paid three (or more) pay periods after it is earned. With respect to Plaintiff, for example, and according to her wage statements, she supposedly earned and was paid the "PrYr BonEli – NAJ' bonuses on the

following schedule:

| AMOUNT | TIME FRAME SUPPOSEDLY EARNED | DATE PAID |
|---|---|---|
| $850 | 9.21.15 to 12.27.16 | 2.26.16 |
| $1100 | 9.19.16 to 1.08.17 | 2.24.17 |

21. Similarly, "Bonus Elig – NAJ" is apparently earned two times a year and also paid three or more pay periods after it is earned. With respect to Plaintiff, for example, and according to her wage statements, she supposedly earned and was paid the "Bonus Elig – NAJ" bonuses on the following schedule:

| AMOUNT | TIME FRAME SUPPOSEDLY EARNED | DATE PAID |
|---|---|---|
| $250 | 8.25.15 to 10.04.15 | 12.04.15 |
| $950 | 12.14.15 to 4.03.16 | 6.03.16 |
| $950 | 6.13.16 to 10.02.16 | 12.02.16 |
| $1200 | 12.26.16 – 4.02.17 | 6.02.17 |

22. Finally, "Base Comp-Retro" is, according to Fidelity's wage statements, paid more than two weeks after it is earned. With respect to Plaintiff, for example, she supposedly earned and was paid the "Base Comp Retro" in part on the following schedule:

| AMOUNT | TIME FRAME SUPPOSEDLY EARNED | DATE PAID |
|---|---|---|
| $156.85 | 11.30.15 to 12.13.15 | 12.31.15 |
| $13.22 | 10.03.16 to 10.16.15 | 11.04.16 |

- 5 -
COMPLAINT

23. Fidelity does not consistently pay overtime on "Base Comp Retro" pay.

24. Fidelity does purport to pay "retroactive" overtime compensation for bonuses and, occasionally, base compensation retro pay. In violation of Labor Code §§ 204 and 226, however, Fidelity's wage statements fail to set forth the applicable bonus/base comp. hourly rate in effect during the pay period in which the "retroactive" overtime was earned. The wage statements also fail to set forth the number of hours worked at each bonus/base comp. hourly rate for the "retroactive" overtime. By refusing to provide this information on its wage statements, Fidelity hides the fact that it is not paying employees the proper overtime rate on their bonus and base compensation retro pay.

25. For example, according to Plaintiff's wage statements, the "Bonus Elig – NAJ" bonus, the "PrYr BonEli – NAJ" bonus, and the Base Comp. Retro pay have overlapping time frames. However, the total compensation earned during these overlapping time frames was not included in calculating the regular rate of pay for overtime purposes.

26. Even ignoring Fidelity's failure to include bonus and base compensation retro pay earned during overlapping time frames in Plaintiff's overtime rate of pay, Fidelity still underpays bonus overtime compensation to its employees in violation of accepted formula for calculating such overtime.

*Student Loan Repayments*

27. Another form of compensation that Fidelity pays to its non-exempt employees is student loan repayments pursuant to its "Step Ahead Student Loan Program." Through this program, Fidelity pays up to $2,000 a year towards its employees' student loans.

28. In order to be eligible for this program, employees must work for Fidelity for more than six months, must work more than 20 hours a week, and they must have a satisfactory work performance. According to Fidelity, more than 5,000 of its employees participate in this program.

29. Plaintiff was eligible for this program and participated in it. Fidelity paid $166.67 towards Plaintiff's student loans every month. The entire amount of these monthly payments was imputed to Plaintiff as wages on her wage statements

30. Fidelity does not include student loan repayments in calculating the regular rate of pay for overtime purposes for its non-exempt employees. In this way, Fidelity reduces the cost of overtime in violation of federal and state law.

*Fitness Reimbursements*

31. Another form of compensation that Fidelity pays to its non-exempt employees is so-called "fitness reimbursements" pursuant to its "Fitness Reimbursement Program." Under this program, Fidelity will "reimburse" employees up to $300 a year for things such as their own or their spouse's gym memberships, home exercise equipment, or Garmon watches.

32. In order to be eligible for the Fitness Reimbursement program, employees must work for Fidelity for more than six months and must work more than 20 hours a week. They will only receive the reimbursement if they are actively working.

33. Plaintiff was eligible for this program and participated in it. She received "fitness reimbursements' from Fidelity in 2016 and 2017. The entire amount of this fitness reimbursement was imputed to Plaintiff as wages on her wage statements

34. Fidelity does not include fitness reimbursements in calculating the regular rate of pay of non-exempt employees for overtime purposes. In this way as well, Fidelity reduces the cost of overtime in violation of federal and state law.

**PAID SICK LEAVE INFORMATION**

35. Under California Labor Code § 246, California employees are entitled to paid sick leave. An employer can satisfy the requirements of Labor Code § 246 through a paid time off (or "PTO") policy that satisfies certain requirements. Fidelity provides its employees with PTO.

36. California Labor Code § 246(i) further requires employers to provide:

> [A]n employee with written notice that sets forth the amount of paid sick leave available, or paid time off leave an employer provides in lieu of sick leave, for use on either the employee's itemized wage statements described in Section 226 or in a separate writing provided on the designated pay date with the employee's payment of wages.

37. Fidelity does not provide the notice required by Labor Code § 246(i) to its

California-based employees, including Plaintiff.  This violation is not isolated or unintentional.  It is systematic.

## PLAINTIFF'S SEPARATION FROM FIDELITY

38. In September 2017, Plaintiff separated from Fidelity.  Upon her separation, Fidelity – willfully -- did not pay her all wages owed.  Among other things, and as detailed above, it did not include all her overtime.

39. Moreover, upon her separation, Plaintiff was harmed by Fidelity's failure to comply with Labor Code § 246(i).  Upon ending her employment, Fidelity advised her that *she* supposedly owed *it* money for taking too much PTO.  Moreover, because Plaintiff had received a raise from Fidelity, Fidelity claimed that *she* owed *it* money at the increased PTO rate, even though she was paid a lesser amount when she (supposedly) took the PTO.

40. Had Fidelity provided PTO information to Plaintiff on a timely or ongoing basis, as required by Labor Code § 246(i), she would have been in a position to challenge this claim.  In the alternative, she could have arranged her PTO so that she did not allegedly "fall into arrears" with Fidelity.

## COLLECTIVE ACTION ALLEGATIONS

41. Plaintiff brings her First Cause of Action for violation of the FLSA as a nationwide collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).  The collective action is brought on behalf of herself and all former and current non-exempt employees of Fidelity who file consents to join this collective action, and:

   a. Whose overtime rate of pay was miscalculated because it failed to accurately calculate and/or include all bonus compensation or base pay retro compensation.

   b. Whose overtime rate of pay was miscalculated because it did not include student loan repayments.

   c. Whose overtime rate of pay was miscalculated because it did not include fitness reimbursements.

        d.      Whose overtime rate of pay was miscalculated because it did not include other compensation in the rate of pay calculation as required by the FLSA.

(The "Nationwide FLSA Collection Plaintiffs.")

42.     Plaintiff and the Nationwide FLSA Collective Plaintiffs are similarly situated in that they are subject to Fidelity's common practice and policy of failing to include required amounts in calculating their rate of pay for overtime purposes and miscalculating bonus and base compensation retro overtime pay.

43.     The First Cause of Action for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), because Plaintiff's claims are substantially similar to the claims of the Nationwide FLSA Collective Plaintiffs.

44.     The names and addresses of the Nationwide FLSA Collective Plaintiffs are available from Fidelity, and notice should be provided to the Nationwide FLSA Collective Plaintiffs via first class mail and email to the last address known to their employer(s) as soon as possible.

45.     Attached to this Complaint is the consent to sue signed by Plaintiff pursuant to 29 USC § 203.

## CLASS ACTION ALLEGATIONS

46.     Plaintiff brings her other causes of action on behalf of the following California Class pursuant to Federal Rule of Civil Procedure 23.

### The Class

47.     All California-based current and former employees whom Fidelity classified as "non-exempt," who worked overtime, and who were paid bonuses, base compensation retro, student loan repayments, and/or fitness reimbursements.

### The Subclass

48.     All California-based former employees of Fidelity who otherwise meet the definition of the Class.

49.     Plaintiff reserves the right to refine the definition of the proposed Class based on

further investigation and discovery.

50. Plaintiff's claims should be resolved on a class-wide basis, and there is a well-defined community of interest with respect to the litigation.

51. The Class is sufficiently numerous and joinder of all putative class members is impracticable.

52. The Class is ascertainable.

53. Plaintiff's claims are typical and/or similar to the claims of the Class she seeks to represent.

54. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff does not have interests which are adverse to the interests of absent class members.

55. Class counsel is experienced, qualified and capable. They have litigated numerous class and collective action cases.

56. There are common questions of law and fact. These include:

    a. Did Fidelity accurately calculate the Class's regular rate of pay in purporting to pay overtime on non-discretionary bonuses and base compensation retro pay?

    b. Must Fidelity's student loan repayments for employees be included in the regular rate of pay for overtime purposes?

    c. Must Fidelity's fitness reimbursement payments to employees be included in the regular rate of pay for overtime purposes?

    d. Was Fidelity's conduct willful and/or lack good faith?

    e. Did Fidelity's wage statements allow the Class to promptly and easily determine, from the wage statements alone, their total hours worked and/or all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate?

    f. Did Fidelity's wage statements violate the California Labor Code?

    b. Was Fidelity's conduct in failing to pay the Class all wages owed at the time of separation willful?

57. A class action is the superior way of resolving these claims. Class treatment will permit a large number of similarly situated persons to prosecute their claims in a single forum, without unnecessary duplication, and without fear of retaliation. The cost to the court system of individualized litigation would be substantial.

### FIRST CAUSE OF ACTION

### OVERTIME
### ON BEHALF OF
### PLAINTIFF AND THE NATIONWIDE COLLECTIVE PLAINTIFFS

58. Plaintiff incorporates paragraphs 1 through 57 of this Complaint as if fully set forth here.

59. At all relevant times, Fidelity has been, and continue to be, an enterprise engaged in interstate commerce and/or in the production of goods for commerce with the meaning of 29 U.S.C. § 203.

60. The FLSA requires employers to include all applicable compensation in calculating an employee's rate of pay for overtime purposes.

61. Fidelity did not include all applicable compensation in calculating its employees' rate of pay for overtime purposes.

62. The FLSA requires employers to calculate the regular rate of pay based on amounts earned while the overtime is being worked.

63. Fidelity did not calculate the overtime rate of pay for Plaintiff and other FLSA Collective Action Plaintiffs based on amounts earned while the overtime was being worked.

64. Fidelity knew or should have known of its violations of the law. Fidelity's conduct was willful and neither in good faith nor with a reasonable belief that it was complying with the law.

65. Plaintiff and the Nationwide FLSA Collective Action Plaintiffs were harmed as a result. They did not receive all the wages to which they were entitled.

## SECOND CAUSE OF ACTION

### OVERTIME
### ON BEHALF OF
### THE CLASS

66. Plaintiff incorporates paragraphs 1 through 65 of this Complaint as if fully set forth here.

67. Under California law, employers must pay employees overtime based upon their regular rate of pay for time worked in excess of 8 hours in a day.

68. Fidelity did not include required compensation in calculating the overtime rate of Plaintiff or the Class. Defendants also miscalculated Plaintiff's and the Class's overtime rates when they did include such compensation.

69. Fidelity's conduct was willful and not done in good faith.

70. Plaintiff and the Class were harmed as a result. They did not receive all the wages to which they were entitled.

## THIRD CAUSE OF ACTION

### LABOR CODE § 226
### ON BEHALF OF
### THE CLASS

71. Plaintiff incorporates paragraphs 1 through 70 of this Complaint as if fully set forth here.

72. Under California law, an employer must provide employees with an accurate wage statement. Among other things, the wage statement must include the gross wages earned, the total hours worked, and the wage rate worked for each hour. An employee suffers injury when this law is violated if the employee cannot (among other things) easily determine from the wage statement the gross or net wages paid or earned, the hours worked, or the applicate hourly rates. The penalties for violating this law are set by statute. See California Labor Code sections 226.

73. As set forth above, Fidelity knowingly and intentionally failed to provide Plaintiff and the Class with accurate wage statements.

74. Plaintiff and the Class suffered injury as a result of Fidelity's conduct.

- 12 -
COMPLAINT

## FOURTH CAUSE OF ACTION

### WAITING TIME PENALTIES
### ON BEHALF OF
### THE SUBCLASS

75. Plaintiff incorporates paragraphs 1 through 74 of this Complaint as if fully set forth here.

76. Under California law, an employer must pay an employee all wages due upon termination or resignation. The willful failure to do so results in waiting time penalties equal to 30 days of an employee's wage. See Labor Code section 203.

77. Fidelity did not pay Plaintiff and other members of the Subclass all wages due and owing upon their separation from Fidelity's employ.

78. This conduct by Fidelity was willful. It knew or should have known of the overtime wages incurred and not paid to Plaintiff and the Subclass.

79. As a result, Fidelity is liable to Plaintiff and the Subclass for waiting time penalties.

## FIFTH CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICES
### ON BEHALF OF THE CLASSES

80. Plaintiff incorporates paragraphs 1 through 79 of this Complaint as if fully set forth here.

81. California law prohibits any unlawful, unfair, or fraudulent business practice. See California Business and Professions Code section 17200.

82. Through its actions (as described above), Fidelity has violated a variety of California and federal wage and hour laws, including the California Labor Code and the FLSA. Plaintiff and the Class have been harmed by Fidelity's conduct. They have not been paid all wages earned. They have not been paid on a timely basis. They are entitled to restitution and an injunction.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays individually and on behalf of other persons similarly situated, for judgment against Defendants as follows:

1. An Order that this action may proceed on a collective and class-wide basis;
2. Appropriate injunctive relief, including restitution;
3. An award of reasonable attorneys' fees and costs;
4. Damages in the form of statutory penalties, unpaid wages, and other damages, according to proof;
5. Pre-judgment and post-judgment interest as provided by law; and
6. Such other and further relief that the Court may deem just and proper.

Dated: October 20, 2017        BAKER CURTIS & SCHWARTZ, P.C.

By:   ------S------
      Chris Baker
      Attorneys for Plaintiff
      ADRIAN MORRIS

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: October 20, 2017        BAKER CURTIS & SCHWARTZ, P.C.

By:   ------S------
      Chris Baker
      Attorneys for Plaintiff
      ADRIAN MORRIS

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT (29 U.S.C. § 216(b))

I worked for Fidelity from approximately August 2015 to September 2017 as a financial representative in Defendants' Marin, California investor center.

I consent to be a party plaintiff in a lawsuit alleging that Fidelity Investments, FMR LLC and Fidelity Brokerage Services LLC (collectively "Fidelity") violated the Fair Labor Standards Act and California labor laws. I understand that this lawsuit seeks unpaid overtime, related damages and other compensation that may be owed to me and other current and former employees of Fidelity.

I understand that I have the right to choose other counsel and to pursue my claims solely on my own behalf, and I choose to be represented in this matter by class counsel Baker Curtis & Schwartz, P.C. and other attorneys with whom they may associate.

Dated: October 20, 2017

Signature: *Adrian M.*

Print Name: Adrian Morris