1  CHRIS BAKER, State Bar No. 181557
   cbaker@bakerlp.com
2  MIKE CURTIS, State Bar No. 252392
   mcurtis@bakerlp.com
3  BAKER CURTIS & SCHWARTZ, P.C.
   1 California Street, Suite 1250
4  San Francisco, CA 94111
   Telephone: (415) 433-1064
5  Fax:  (415) 366-2525

6
   Attorneys for Plaintiff
7  ADRIAN MORRIS

8
                    UNITED STATES DISTRICT COURT
9
        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION
10

11

12

13  ADRIAN MORRIS, on behalf of herself and     Case No. 3:17-cv-06027-WHA
    all others similarly situated,
14                                              **NOTICE OF MOTION AND MOTION**
                    Plaintiff,                  **FOR FINAL APPROVAL OF THE CLASS**
15                                              **AND COLLECTIVE ACTION**
            vs.                                 **SETTLEMENT**
16
17  FIDELITY INVESTMENTS, a legal entity of
    an unknown form, FMR, LLC, a Delaware       Judge: Hon. William H. Alsup
18  limited Liability Company, FIDELITY         Date:  August 22, 2019
    BROKERAGE SERVICES LLC, a Delaware          Time: 11:00 a.m.
19  Limited Liability Company (collectively     Ctrm: 12 – 19th Floor
    "FIDELITY"),
20
21                  Defendants.

22

23      PLEASE TAKE NOTICE that on August 22, 2019 at 11:00 a.m., before the Honorable

24  William H. Alsup, of the United States District Court for the Northern District of California,

25  located at 450 Golden Gate Avenue, San Francisco, California, 94102, Plaintiff Adrian Morris will

26  and hereby does move the Court for an Order: (1) pursuant to Rule 23(e) of the Federal Rules of

27  Civil Procedure, granting final approval of the class action settlement at issue in this case and (2)

28

                                              1

granting final approval of the settlement of the collective claims under the Fair Labor Standards Act.

The deadline for filing objections to the Settlement was July 18, 2019.  To date, no objections have been filed.  Per the Court's order, the parties will respond to any objections by August 15, 2019.

Plaintiff's Motion is based on this Notice of Motion, the Memorandum of Points and Authorities attached to this Motion, the Declarations, Exhibits, and all pleadings and papers filed herein, the arguments of counsel, and any other matters properly before the Court.

<u>STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3))</u>

1. Should the Court finally approve the Class settlement of this Action?

2. Should the Court finally approve the FLSA collective settlement of this Action?

As explained in the attached Memorandum of Points and Authorities and other supporting papers, Plaintiff submits that the answer to each of these questions is "yes."

DATED:  July 24, 2019                         BAKER CURTIS & SCHWARTZ, P.C.


By:  /s/ Chris Baker
                                     Chris Baker
                                     Mike Curtis
                                     Attorneys for Plaintiff
                                     ADRIAN MORRIS

MOTION FOR FINAL APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT

**Table of Contents**

I.   INTRODUCTION ..................................................................................................1

II.  BRIEF STATEMENT OF FACTUAL ALLEGATIONS
     AND CLAIMS....................................................................................................1

     A. Fidelity's Overtime Rate Calculations/Alleged Claims.............................1

     B. Litigation Background ...............................................................................3

III. SUMMARY OF THE AGREEMENT ...............................................................5

IV.  CLASS/COLLECTIVE NOTICE AND RESPONSES......................................6

V.   ARGUMENT .....................................................................................................8

     A. Notice to the Class and Collective Was Provided Consistent with
        Rule 23(e) and This Court's Preliminary Approval Order ........................8

     B. The Court Should Grant Final Approval of the Settlement ........................8

        1.  Rule 23 Paragraphs (A) and (B), "The Procedural Concerns" .........9

        2.  Rule 23 Paragraphs (C) and (D), "The Substantive Review"..........12

     C. The FLSA Settlement Is Fair and Reasonable .........................................17

VI.  CONCLUSION................................................................................................18

1

**Table of Authorities**

2

<u>Cases</u>

3

*Adoma v. University of Phoenix, Inc.,*
    913 F. Supp. 2d 964 (E.D. Cal. 2012) ...............................................................13

4

*Alvarado v. Dart Container Corp. of California,*
    4 Cal.5th 542 (2018)..........................................................................2, 6, 12

5

6

*Chavez v. WIS Holdings Corp.,*
    2013 WL 2181214 (S.D. Cal. May 20, 2013)......................................................14

7

8

*Cicero v. DirecTV, Inc.,*
    2010 WL 2991486 (C.D. Cal. July 27, 2010) ....................................................15

9

10

*Chun-Hoon v. McKee Foods Corp.,*
    716 F.Supp.2d 848 (N.D. Cal. 2010) ...........................................................7, 13

11

*Covillo v. Specialty's Café,*
    2014 WL 954516 (N.D. Cal. Mar. 6, 2014) ........................................................5

12

13

*Garner v. State Farm Mut. Auto Ins. Co.,*
    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ....................................................15

14

15

*Genesis Healthcare Corp. v. Symczyk,*
    133 S.Ct. 1523 (2013) ...................................................................................17

16

17

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) .......................................................................15

18

19

*Hopson v. Hanesbrands Inc.,*
    2009 WL 928133 (N.D. Cal. Apr. 3, 2009).......................................................13

20

*In re Bluetooth Headset Products Liability Litigation,*
    654 F.3d 935 (9th Cir. 2011) ..........................................................................9

21

22

*In re Global Crossing Securities and ERISA Litigation,*
    225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................17

23

24

*In re LDK Solar Securities Litigation,*
    2010 WL 3001384 (N.D. Cal. July 29, 2010) ...................................................12

25

26

*In re Omnivision Technologies, Inc.,*
    559 F.Supp.2d 1036 (N.D. Cal. 2008) ..............................................................7

27

28

ii

*Lazarin v. Pro Unlimited, Inc.*,
    2013 WL 3541217 (N.D. Cal. July 11, 2013)..................................................16

*Lee v. The Timberland Co.*,
    2008 WL 2492295 (N.D. Cal. June 19, 2008) ...........................................17

*Lemus v. H&R Block Enterprises, LLC*,
    2012 WL 3638550 (N.D. Cal. Aug. 22, 2012) ...........................................8

*Linney v. Cellular Alaska Partnership*,
    151 F.3d 1234 (9th Cir. 1998) ...............................................................9, 14

*Minor v. FedEx Office and Print Services, Inc.*,
    2013 WL 503268 (N.D. Cal. Feb. 8, 2013) ..............................................15

*Millan v. Cascade Water Services, Inc.*,
    2016 WL 3077710 (E.D. Cal. May 31, 2016) ..........................................17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ..............................................................7

*Nwabueze v. AT & T Inc.*,
    2013 WL 6199596 (N.D. Cal. Nov. 27, 2013) .........................................9

*Ontiveros v. Zamora*,
    303 F.R.D. 356 (E.D. Cal. 2014) ..............................................................5

*Otey v. CrowdFlower, Inc.*,
    2014 WL 1477630 (N.D. Cal. Apr. 15, 2014) .........................................17

*Quiroz v. City of Ceres*,
    2019 WL 1005071 (E.D. Cal. Mar. 1, 2019) ...........................................10

*Reynolds et al. v. Fidelity Investments Operations Company, Inc. et al.*,
    Case No. 1:18-CV-00423-CCE-LPA (M.D. N.C.)...............................11, 12

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) .............................................................8, 14

*Saravia v. Dynamex Operations West, LLC*,
    2017 WL 1295069 (N.D. Cal., Apr. 7, 2017) ..........................................12

*Slavkov v. Fast Water Heater Partners I, LP*,
    2017 WL 3834873 (N.D. Cal. July 25, 2017) .........................................17

MOTION FOR FINAL APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...........................................................................8, 17

*Stearne v. Heartland Payment Systems LLC*,
    2018 WL 746492 (E.D. Cal. Feb. 6, 2018)..................................................................14

*Stovall-Gusman v. W.W. Granger, Inc.*,
    2015 WL 3776765 (N.D. Cal. June 17, 2015) ...............................................................12

*Titus v. McLane Foodservice, Inc.*,
    2016 WL 4797497 (E.D. Cal. Sep. 13, 2016) ...............................................................14

*True v. American Honda Motor Co.*,
    749 F.Supp.2d 1052 (C.D. Cal. 2010) .............................................................................9

*Valentine v. Sacramento Metropolitan Fire District*,
    2019 WL 651654 (E.D. Cal. Feb. 15, 2019) .................................................................10

*Villegas v. J.P. Morgan Chase & Co.*,
    2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ..............................................................10

*Willner v. Manpower Inc.*,
    2015 WL 3863625 (N.D. Cal. June 22, 2015) ...........................................................7, 12

### Statutes/Regulations

California Labor Code § 203 ...........................................................................................14, 17

California Labor Code § 226 ...........................................................................................14, 16

California Labor Code § 2698 *et seq.* ....................................................................................2

Federal Rules of Civil Procedure, Rule 23 .........................................................2, 3, 8, 12, 17

Federal Rules of Civil Procedure, Rule 23(e)........................................8, 9, 10, 12, 13, 17

Federal Rules of Civil Procedure, Rule 23, Committee Notes on Rules ...........................8, 10, 16

### Other

SOCIAL SECURITY, UNDERSTANDING THE BENEFITS (2015) at 8-9, available at
    (http://www.ssa.gov/pubs/EN-05-10024.pdf)........................................................................5

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On October 20, 2017, Plaintiff Adrian Morris filed this lawsuit alleging that Fidelity Brokerage Services LLC and other Fidelity entities (collectively "Fidelity") violated certain wage and hour laws, predominantly based on not properly calculating non-exempt employees' regular rates of pay for overtime purposes.

In exchange for a release tailored to the facts and claims asserted in this lawsuit, Fidelity paid $1,200,000 to a common fund, plus an additional amount for the employer's share of payroll taxes attributable to the settlement payments.  Moreover, while Fidelity does not admit to violating any laws through its pay practices, it nevertheless has agreed to revise its pay practices going forward. The *gross* settlement amount provides the 7,530 potentially covered individuals more than their potential compensatory damages and the *net* settlement amount provides them at least 76 cents on the compensatory-damages-dollar.

The 580 members of the California Rule 23 class were provided notice of the settlement and given an opportunity to object or exclude themselves.  The 6,950 others, *i.e.*, the non-California members of the collective, were provided notice that they could join the FLSA collective by cashing the settlement check sent to them after, and assuming, final approval.  Like the Rule 23 class notice, the potential collective members' notice also provided them instructions on how they could express opinions on the settlement.  Only three individuals excluded themselves from the class settlement and no one objected to or expressed any concerns about the overall settlement.  (Baker Decl. ¶¶ 3, 4, Ex. 1 [Myette Decl. at ¶¶ 13-14].)  The settlement should be finally approved.

## II.    BRIEF STATEMENT OF FACTUAL ALLEGATIONS AND CLAIMS

### A.    Fidelity's Overtime Rate Calculations/Alleged Claims

Plaintiff primarily claims in this lawsuit that Fidelity improperly calculated the regular rate of pay for overtime purposes in three ways.  (*See* FAC [Dkt. 34] ¶¶ 19-34, 59-71.)  **First**, Fidelity included <u>all</u> hours worked in a pay period in determining the overtime rate for bonuses, instead of

only <u>non-overtime</u> hours. (Baker Declaration in Support of Preliminary Approval (hereafter Preliminary Approval Decl.") ¶ 8, Ex. 6. [Dkt. 60-1 p.136].)[1]  While the Department of Labor endorses Fidelity's methodology, Plaintiff claims that under California law, Fidelity's bonuses are non-discretionary "flat sum" bonuses for which overtime rates must be calculated based on only the number of non-overtime hours in a pay period.  *See Alvarado v. Dart Container Corp. of California*, 4 Cal.5th 542 (2018).  **Second**, through its "Step Ahead Student Loan Program," Fidelity pays a portion of its employees' student loan debt, but did not include these loan repayments in calculating regular rates of pay for overtime purposes.  (Preliminary Approval Decl. Ex. 5, ¶ 5 [Dkt. 60-1 p. 117]; Ex. 7 [Dkt. 60-1 p.138]; Dkt. 47,[2] ¶ 12.)  **Third**, Fidelity maintains a "Fitness Reimbursement Program," through which it reimburses its employees for certain expenses related to physical fitness, but did not include these loan repayments in calculating regular rates of pay for overtime purposes.  (Preliminary Approval Decl. Ex. 5, ¶ 5 [Dkt. 60-1 p. 117]; Ex. 8 [Dkt. 60-1 p. 141]; Dkt. 47, ¶ 17.)

In light of these allegations, Plaintiff's First Amended Complaint ("FAC") asserts a claim for unpaid overtime under California law, a claim for wage statement violations resulting from Fidelity's alleged failure to properly calculate and report overtime rates, and a claim for waiting time penalties on behalf of former employees for the same unpaid overtime.  The FAC also alleges a claim under California's Private Attorneys General Act, Labor Code § 2698 *et seq.* ("PAGA") based on the preceding claims, as well as on Fidelity's alleged failure to notify its employees of their accrued sick leave and the alleged late payment of bonuses.  Finally, the FAC alleges a collective claim for unpaid overtime under the FLSA based on Fidelity not including the student loan and fitness reimbursements in its regular rate calculations.

The settlement in this case resolves these claims on a class and collective basis consistent

---

[1] For the Court's convenience, the Preliminary Approval Declaration (with its exhibits that are referenced in this motion) is attached as Exhibit 3 to the Baker Declaration in Support of Final Approval of the Class and Collective Action Settlement ("Baker Decl.").  Docket citations for the previously filed declaration are provided to distinguish it and to aid the Court's reference should it wish to review the original filings.

[2] Docket 47 is the stipulation for class and collective certification.

1  with the previously stipulated and certified Rule 23 class and FLSA collective, both of which were

2  certified before the parties began settlement negotiations.

3      **B.      Litigation Background**

4          After filing this lawsuit on October 20, 2017, Plaintiff filed the operative FAC on February

5  21, 2018.  (Dkt. 34.)  Defendant FMR LLC moved to dismiss the FAC, arguing that Fidelity

6  Brokerage Services was Plaintiff's sole employer.  (Dkt. 38.)  The Court denied that motion as to

7  FMR on June 1, 2018, but dismissed defendant Fidelity Investments.  (Dkt. 50.)

8          Discovery was ongoing during this period.  In February 2018, the parties exchanged initial

9  disclosures, and Plaintiff served her written discovery to which Fidelity timely responded.  As a

10  result of an extensive meet and confer process, Fidelity made several document productions, which

11  included the relevant policies, dozens of Compensation Plans, Plaintiff's wage statements, and

12  massive spreadsheets that included all the financial data related to overtime, bonuses, student loan

13  and fitness reimbursements, and other information.  (Preliminary Approval Decl. ¶ 8 [Dkt. 60-1 pp.

14  3-4].)  Class counsel retained a data consultant with expertise in managing large datasets and

15  extracting usable information from these sets.  (*Id.* at ¶ 7(c) [Dkt. 60-1 p. 3].)   With its data

16  consultant's analysis, Class Counsel was able to confirm it had all the information needed to value

17  the claims alleged in this lawsuit and performed that valuation.  (Dkt. 60, pp. 13-18.)

18          The parties also conferred about certification of the class and collective during this period.

19  This resulted in the proposed stipulation submitted to the Court.  (Dkt. 47.)  On June 1, 2018, the

20  Court certified the Rule 23 Class and FLSA Collective.  (Dkt. 51.)

21          The **Rule 23 Class** includes all former and current employees of Fidelity Brokerage in

22  California who satisfied the following two conditions between October 20, 2013 and October 1,

23  2018: (1) Fidelity Brokerage classifies(d) them as "non-exempt"; and (2)(a) they were paid bonus

24  compensation pursuant to a Compensation Plan and were also paid a bonus overtime adjustment

25  with respect to that bonus compensation; and/or (b) they worked overtime during a month in

26  which they received a student loan repayment; and/or (c) they worked overtime during a pay

27  period in which they received a fitness reimbursement.  There are 580 Class members.

28

1  (Settlement Agreement ("SA") ¶¶ 1.1; 1.3.)[3]

2      The **FLSA Collective** is defined as all US-based former and current employees of Fidelity

3  Brokerage, who worked outside of California from May 31, 2015 to October 1, 2018, and who

4  satisfy the following two conditions: (1) Fidelity Brokerage classifies(d) them as "non-exempt;"

5  and (2)(a) they worked overtime during a month in which they received a student loan repayment;

6  and/or (b) they worked overtime during a pay period in which they received a fitness

7  reimbursement.  The FLSA Collective consists of 6,950 potential members.  (SA ¶ 1.23.)

8      After certification was granted, the parties began the process of preparing for a settlement

9  conference with Judge Spero on September 5, 2018.  They followed all Judge Spero's and this

10  Court's directions about resolving collective cases and were able to reach a settlement in principle at

11  that conference.  After three months of further negotiating, the parties finalized their agreement.

12  (Preliminary Approval Decl. ¶ 13 [Dkt. 60-1 p. 5].)

13      Plaintiff filed her motion for preliminary approval on December 14, 2018.  (Dkt. 60.)  On

14  January 31, 2019, the Court held a hearing on Plaintiff's motion, at which the Court directed the

15  parties to address certain issues. The Court set a further hearing date of February 14, 2019 to

16  consider the revisions.  (Dkt 66.)  On February 12, 2019, Plaintiff submitted a supplemental brief in

17  support of preliminary approval and a revised settlement agreement.  (Dkt. 68.)  Following the

18  February 14 hearing, the Court granted preliminary approval.  (Dkt. 70.)  In discussing the benefit to

19  the collective and class members, that Order stated:

20  The proposed settlement agreement establishes a gross settlement fund of $1.2
21  million, amounting to more than one hundred percent of the $1,071,404 in wages
   that plaintiff contends is owed to the class and collective. [¶]  If plaintiff is awarded
22  the full $538,711 in deductions she plans to request, the net settlement fund would
   represent approximately seventy-six percent of recoverable compensatory
23  damages. The difference between this possible recovery and the gross settlement
   fund accounts for the avoided risks and costs of continued litigation. This motion
24  follows the parties' exchange of key written and documentary discovery and, as
   explained in plaintiff's motion, whether or not plaintiff would prevail on her
25  primary claim for overtime wages or succeed in obtaining penalties under
   California law is far from certain. Moreover, the proposed settlement agreement
26  compels defendants to change their business practices to address the issues raised

27  _____

28  [3] The finalized settlement and its exhibits are attached to the Baker Decl. as Exhibit 4.

in this lawsuit. This corrective measure, combined with the monetary payout to the class, falls within the range of possible approval. (3:10-4:8.)

As to notice, the Court's Order appointed Rust Consulting as Claims Administrator. (Dkt. 70, p. 6.) The Court approved the form of notice to the class and collective and the procedures for providing notice. (*Id.* at 5.) The Claims Administrator's declaration in support of final approval is attached to the Baker Declaration as Exhibit 1, which establishes the Court's orders on notice were followed. Finally, the Court established a schedule for the case going forward, with an objection deadline of July 18, 2019 and a Final Fairness Hearing set for August 22, 2019. (*Id.* at 6.)

## III.    SUMMARY OF THE AGREEMENT

As mentioned, the Agreement requires Fidelity to pay $1,200,000 into a non-reversionary Settlement Fund. (SA ¶ 1.19.) It also requires Fidelity to separately pay the employer's share of payroll taxes arising out of any settlement payments. (SA ¶ 2.1.1.)[4]

The Agreement provides for deductions from the common fund prior to disbursement to the class/collective members, but the only such deduction set by the Agreement is the $15,000 amount to be paid to the California Labor and Workforce Development Agency pursuant to PAGA. (SA ¶ 1.19.) The Agreement acknowledges that Class Counsel will move the Court to award from the common fund the following: Attorneys' fees, reimbursement of litigation costs, an enhancement payment to Plaintiff for her service in this case (which Plaintiff has requested in her motion at Dkt. 71) and payment to the claims administrator of $50,876.[5] These amounts are left to the Court's

[4] This is an additional benefit to the class/collective because it is not unusual for an employer's share of payroll taxes to be paid from the agreed upon settlement amount. *E.g., Covillo v. Specialty's Café,* 2014 WL 954516, *2 (N.D. Cal. Mar. 6, 2014) (paying payroll taxes from settlement amount); *Ontiveros v. Zamora,* 303 F.R.D. 356 (E.D. Cal. 2014) (same). These payroll taxes (at least with respect to Social Security) also directly benefit the class. The amount of money contributed to Social Security on behalf of an employee correlates with the amount of money the employee eventually receives from Social Security. *See,* SOCIAL SECURITY, UNDERSTANDING THE BENEFITS (2015) at 8-9 (http://www.ssa.gov/pubs/EN-05-10024.pdf).

[5] While Plaintiff requests fees and an enhancement award in a separate motion, she seeks approval of the deduction from the common fund for payment of $50,876 to the Claims Administrator in this motion. The Claims Administrator's competitive bid of $41,887 (Preliminary Approval Decl. ¶¶ 14-15) grew $8,989 to provide the additional notice to the FLSA collective ordered by the Court following the first preliminary approval hearing. This increase is essentially offset by the $6,709

discretion in accordance with applicable law.  (SA ¶ 2.8.1.)   The Court's Preliminary Approval

Order explained and approved the distribution for the settlement after the deductions:

> The net settlement fund will be divided into a portion for the class and a portion for the collective. California class members who were still employed by Fidelity at the end of the class period will receive ten percent more than the FLSA collective members and members of the "former employee subclass," which includes members of the California class who were no longer employed by Fidelity at the end of the class period, will receive twelve percent more than the FLSA collective members. This takes into account the higher value of claims released by the class and subclass. Each class member gets a pro rata share of the class portion and each collective member gets a pro rata share of the collective portion. The pro rata distribution will be based on the actual amount of unpaid wages each class and collective member would receive if plaintiff established her claims at trial.

(Dkt. 70, 3:16-27.)   The settlement agreement provisions setting forth this distribution plan are

paragraphs 1.7.1-1.7.2; 1.19-1.21, 1.28.1-1.28.2.  (Baker Decl. Ex. 4.)

The amount of any unclaimed settlement sums will be redistributed to currently-employed

collective/class members through Fidelity's payroll system on a *pro rata* basis.  (SA ¶ 2.6.3.)  There

is no reserve fund or *cy pres.*

Finally, while Fidelity does not admit to violating any laws through its past pay practices, it

has agreed to change its practice so that it will now pay regular rate "true-up" payments to its non-

exempt employees in connection with payments made pursuant to its current student loan benefit

program and current fitness reimbursement benefit program, and also to calculate the true-up

payments it makes to its California non-exempt employees on the current bonus plans at issue in

this Litigation (i.e., written compensation plans that did not provide for bonuses paid as a

percentage of earnings) under the method proscribed for flat sum bonuses under California law,

*Alvarado*, 4 Cal.5th 542.  (SA ¶ 2.11.4.)

## IV.   CLASS/COLLECTIVE NOTICE AND RESPONSES

Consistent with the Court's Preliminary Approval Order, Fidelity provided data and contact

---

that the litigation costs turned out to be cheaper than estimated so that the class/collective still
recovers seventy-six cents of the compensatory-damages dollar.  (Baker Decl. ¶ 6.)

MOTION FOR FINAL APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT

information to the Claims Administrator.  As more fully explained in its representative's

declaration (Amanda Myette), the Claims Administrator updated the contact information and

finalized the notices.  The Claims Administrator also established a toll-free line for class member's

questions and website at http://www.morrisfidelitycollectivesettlement.com.  (Baker Decl. Ex. 1 ¶¶

4-9.)

On or before March 18, 2019, the Claims Administrator mailed the 7,530 notice packets.

The notice packets set forth the class/collective members' options, the relevant deadlines, and their

estimated payouts. The packets also referred class/collective members to Class Counsel's contact

information, the Claims Administrator's toll-free telephone line and the Claims Administrator's

website in the event of questions.  (*Id.* at ¶ 10, Ex. 1.)  Class Counsel, for its part, established a

website dedicated to the case and the settlement, which included the settlement agreement, court

filings and which highlighted important dates.  (*See* http://www.bakerlp.com/morris-vs-Fidelity/;

Baker Decl. Ex. 2.)  Class Counsel also spoke with several of the class/collective members.  None

expressed any concerns about the fairness of the settlement.  (Baker Decl. ¶ 6.)

Out of the 7,530 notices sent, 413 were initially returned as undeliverable.  The Claims

Administrator was able to obtain 335 updated addresses and re-sent the notices to those addresses.

Therefore, only 78 of the 7,530 notices were not delivered, meaning that 99% received notice.  Ten

of those 78 were class members and 68 were potential members of the collective.[6]  (Baker Decl.

Ex. 1 ¶¶ 11-12.)  Only three persons requested exclusion from the Settlement.  To date, no one has

filed any objections to the settlement or otherwise expressed opinions against it.  (Baker Decl. ¶¶ 3,

4, Ex. 1 [Myette Decl. at ¶¶ 13-14].)[7]

---

[6] Pursuant to ¶ 2.6.3 of the settlement agreement, those ten class members will not be subject to
the release.

[7]  "[T]he absence of a large number of objections to a proposed class action settlement raises a
strong presumption that the terms of a proposed class action settlement are favorable to the class
members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528–29 (C.D. Cal.
2004); *In re Omnivision Technologies,* 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008); *Willner v.
Manpower Inc.,* 2015 WL 3863625, *5 (N.D. Cal. June 22, 2015) (no objections and .06%
exclusions "weighs strongly in favor of approval"); *Chun–Hoon v. McKee Foods Corp.,* 716
F.Supp.2d 848, 851 (N.D. Cal. 2010) (finding that 4.86% opt-out rate strongly supported approval).

V.    **ARGUMENT**

    A.    **Notice to the Class and Collective Was Provided Consistent with Rule 23(e) and This Court's Preliminary Approval Order**

        The Court's Preliminary Approval Order set forth the form and manner of notice to the Class and Collective.  (Dkt # 70, p. 5.)  As set forth above, notice has been provided consistent with the Court's Order.  At a minimum, the notice and website provided to the class/collective, "describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward to be heard."  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).  It therefore satisfies Rule 23 and due process requirements.  *Lemus v. H& R Block Enterprises, LLC*, 2012 WL 3638550, *4 (N.D. Cal. Aug. 22, 2012).

    B.    **The Court Should Grant Final Approval of the Settlement**

        In considering a motion for final approval, "it is the settlement taken as a whole, rather than its individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety."  *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003).  That said, the recent amendment to Rule 23, "directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal."  Fed. Rules Civ. Proc., Rule 23, Committee Notes on Rules – 2018 Amendment (hereafter "Advisory Committee Notes").  The factors under Rule 23(e)(2) to consider in determining whether a settlement is "fair, reasonable and adequate" are:

    **(A)** the class representatives and class counsel have adequately represented the class;

    **(B)** the proposal was negotiated at arm's length;

    **(C)** the relief provided for the class is adequate (including sub-considerations discussed below); and

    **(D)** the proposal treats class members equitably relative to each other.[8]

---

[8] This standard does not significantly depart from the factors often previously used in this district: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of proceedings; the experience and

1.    <u>Rule 23 Paragraphs (A) and (B), "The Procedural Concerns"</u>

**As required by Rule 23(e)(2)(A), Adrian Morris and Baker Curtis & Schwartz have adequately represented the class.**

The issue here is whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998). Here, Plaintiff and Class Counsel obtained this settlement after more than a year of litigation, the resolution of a motion to dismiss, an independent investigation and formal discovery, which included the analysis of extensive electronic and paper records,[9] the exchange of settlement conference statements, a settlement conference with Judge Spero, and extensive negotiations to finalize the settlement agreement. (Preliminary Approval Decl. ¶¶ 8-13 [Dkt. 60-1 pp. 3-4]; Dkt. 34, 38, 50.) Those efforts meet the standard. *See e.g., True v. American Honda Motor Co*. 749 F.Supp.2d 1052, 1078 (C.D. Cal. 2010) (factor supported approval where case was litigated for two years, during which class counsel reviewed "thousands of pages of relevant documents" and engaged various experts "to assist them in the review and analysis of information obtained through discovery" in addition to other discovery); *Nwabueze v. AT & T Inc.*, 2013 WL 6199596, *5 (N.D. Cal. Nov. 27, 2013) (factor supports final approval where parties litigated a motion to dismiss and participated in ADR proceedings over the course of nearly a year before reaching settlement).

///

---

views of counsel; the presence of a government participant; the reaction of class members. *See, e.g., In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946 (9th Cir. 2011).

[9] Specifically, Plaintiff's independent investigation allowed her to make her initial disclosures in February, supplemental disclosures in March and a document production on April 30, 2018, which included over 200 pages of Fidelity policies in addition to documents related to Plaintiff. Plaintiff served her interrogatories, requests for admission and requests for production of documents in February 2018. Fidelity timely responded, but largely objected. An extensive meet and confer process followed with Fidelity serving several sets of supplemental responses. The meet and confer efforts also led to Fidelity making at least eight document productions, on March 20, May 2, May 9, July 17, July 19, July 27, July 30, and August 2. The produced documents included the relevant policies, dozens of compensation plans, wage statements and many massive spreadsheets that included all the financial data related to overtime, bonuses, student loan and fitness reimbursements, and other information. (Preliminary Approval Decl. ¶ 8 [Dkt. 60-1 pp. 3-4.])

**As required by Rule 23(e)(2)(B), the settlement was negotiated at arm's length.**

Settlement negotiations began only after certification was obtained and after Fidelity provided class counsel with the documents and data necessary to properly value the case. Plaintiff's opening demand and Fidelity's first response were made in accordance with Judge Spero's procedures. All other negotiations of the settlement took place either before Judge Spero or after the settlement conference. (Preliminary Approval Decl. ¶ 13 [Dkt. 60-1 p. 5].) This factor is therefore met. *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, *6 (N.D. Cal. Nov. 21, 2012) (use of an experienced neutral "tends to support the conclusion that the settlement process was not collusive."); Advisory Committee Notes ("involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests.").

Moreover, the Advisory Committee Notes suggest comparing the settlement to those obtained in similar litigation: "the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base. The pendency of other litigation about the same general subject on behalf of class members may also be pertinent." *See e.g.*, *Quiroz v. City of Ceres*, 2019 WL 1005071, *4 (E.D. Cal. Mar. 1, 2019) (finding that parties engaging in informal discovery over a period of months, which included an exchange of time and payroll data to evaluate the potential range of recovery and Plaintiffs' counsel's analyzing these records and calculating damages was sufficient information to reach an appropriate settlement in overtime pay rate case); *Valentine v. Sacramento Metropolitan Fire District*, 2019 WL 651654, *5 (E.D. Cal. Feb. 15, 2019) (finding that parties engaging in some formal discovery of time and payroll records and also informally exchanging relevant payroll and timekeeping data was enough information to fairly weigh the merits before reaching a resolution in overtime pay rate case).

The Baker Declaration in support of preliminary approval (¶ 28) contains a chart setting forth information about past settlements in cases litigated by Class Counsel involving financial institutions. This table (provided here with updated information) supports final approval of this settlement:

|  | Current Settlement | Garibaldi v. Bank of America (N.D. Cal. 3:13-CV-02223-SI) | Patel v. OneWest Resources, LLC (Los Angeles Superior Court BC653645) |
|---|---|---|---|
| **Total settlement fund** | $1,200,000 | $9,000,000 | $420,000 |
| **Total # of class members** | 7,530 | 38,305 | 504 |
| **Method of notice** | U.S. Mail and webpage | U.S. Mail and webpage | U.S. Mail and webpage |
| **Number/percentage of claim forms submitted** | n/a | 17,200 (44%) | n/a |
| **Average net recovery per class member/claimant** | $108 | $374 | $466 |
| **Amount distributed to *cy pres*** | $0 (redistributed to currently employed class/collective members) | $22,311 to East Bay Community Law Center | Paid to California's unclaimed property fund |
| **Administrative costs** | $50,876 (approx. $7 per class member) | $192,000 (approx. $5 per class member) | $6,995.32 (approx. $14 per class member) |
| **Attorneys' fees and costs** | $300,000 (Class counsel's request for 25% of gross settlement is pending) $13,290.79 costs | $2,250,000 fees (25% of gross settlement) $36,999.38 costs | $140,000 fees (1/3 of gross settlement) $16,000 costs |

On the issue of fairness and the associated effect of the release, it is important to reiterate that Plaintiff negotiated releases here that do not unduly affect other pending litigation. At Docket Entry No. 56, Fidelity placed the Court and Plaintiff on notice of the pendency of *Reynolds et al. v. Fidelity Investments Operations Company, Inc. et al.*, Case No. 1:18-CV-00423-CCE-LPA (M.D. N.C.), which is a collective and class action asserting various wage and hour claims, including regular rate claims. There are 789 individuals who are members of the class or collective in the instant case who are also potential class or collective members in *Reynolds*. The settlement in the case was in no way discounted because of the *Reynolds* case, and the settlement

1    here makes clear that the pertinent release does not go beyond the claims asserted here and thus

2    does not include "the claims for unpaid pre-shift work asserted in *Reynolds et al. v. Fidelity*

3    *Investments Operations Company, Inc. et al.*, Case No. 1:18-CV-00423-CCE-LPA (M.D. N.C.)."

4    (SA ¶¶ 1.4 and 1.27.)

5         The procedural factors for final certification are therefore met.

6              2.    Rule 23 Paragraphs (C) and (D), "The Substantive Review"

7         **As required by Rule 23(e)(2)(C), the relief provided for the class is adequate.**

8         The settlement requires Fidelity to pay a non-reversionary amount of $1,200,000 to a

9    common fund in exchange for the release by the class and the FLSA opt-ins.  That amount exceeds

10   the potential damages claims here.  As discussed above, the parties have calculated the amounts of

11   additional compensation that the class members would have received if Fidelity had calculated the

12   regular rate of pay for overtime by using the *Alvarado* formula for bonuses and included the

13   student loan and fitness reimbursement amounts throughout the California Class period.  That

14   amount totals $682,200.  (Preliminary Approval Decl. Ex. 3, ¶ 8.)  Added together with the

15   amounts the FLSA collective members would have been paid if Fidelity had included student loan

16   and fitness reimbursement in the overtime calculation nationwide, totals $1,071,404.  (*Id.*)

17   Dividing that amount by 7,530, means average compensatory damages would be $142 if Plaintiff

18   proved this case at trial.  After the requested deductions, the proposed net distribution is

19   approximately $815,472, which means the average payout under the settlement will be $108.

20   (Baker Decl. ¶ 7.)  A seventy-six cents on the dollar actual recovery favors final approval.  *Saravia*

21   *v. Dynamex Operations West, LLC,* 2017 WL 1295069, *2 (N.D. Cal. Apr. 7, 2017) (Alsup, J.)

22   (granting final approval in FLSA collective action although settlement amount was a "significant

23   discount on the total recovery for the collective."); *In re LDK Solar Securities Litigation*, 2010 WL

24   3001384, *2 (N.D. Cal. July 29, 2010) (Alsup, J.) (granting final approval where settlement was

25   5% of estimated damages); *Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, *4 (N.D.

26   Cal. June 17, 2015) (granting final approval to wage and hour settlement with net recovery valued

27   at 7.3% of potential recovery); *Willner v. Manpower Inc.,* 2015 WL 3863625, *4 (N.D. Cal. June

28

22, 2015 ) (granting final approval to wage and hour settlement with net recovery valued between 30 and 35% of potential recovery); *Hopson v. Hanesbrands Inc.*, 2009 WL 928133, *8 (N.D. Cal. Apr. 3, 2009) (granting final approval to settlement that was 36% of projected recovery).

***

As explained below, the adequacy of the relief obtained is further confirmed by Rule 23(e)(2)(C)'s sub-considerations of: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).[10]

**The costs, risks, and delay of trial and appeal are significant here.**

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun–Hoon v. McKee Foods Corp.,* 716 F.Supp.2d 848, 851 (N.D. Cal. 2010); *Adoma v. University of Phoenix, Inc*., 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012) (courts "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements.").

Plaintiff (and Class Counsel) believes that, if this case proceeds, <u>Plaintiff</u> will ultimately prevail.  But there are considerable risks with each claim.  Pages 13 to 18 of the motion for preliminary approval (Dkt. 60) and pages eight to ten of the Preliminary Approval Decl. (Dkt. 60-1) provide a thorough claim-by-claim assessment of those risks.  Plaintiff does not repeat that analysis here based on the Court already ruling: "The difference between this possible recovery and the gross settlement fund accounts for the avoided risks and costs of continued litigation." (Dkt. 70, 4:1-2.)  To recap, the following would likely be the biggest challenge for each alleged claim here:

- FLSA overtime: Establishing that student loan and/or fitness reimbursements constitute payments "made as compensation for . . . hours of employment" so they are included in the FLSA regular rate calculation;

---

[10] There are no other agreements for the parties to disclose.

13

- California overtime: Establishing that Fidelity's bonuses are non-discretionary even though the Compensation Plans specifically identify "manager discretion in distributing the overall pool of dollars";

- Labor Code § 203/226 penalties: Rebutting Fidelity's good faith dispute defense that it calculated overtime on its bonuses based on the Department of Labor approved formula;

- PAGA: Prosecuting an insufficient sick-leave notice theory that two federal courts have rejected. *Stearne v. Heartland Payment Systems LLC*, 2018 WL 746492, *2 (E.D. Cal. Feb. 6, 2018); *Titus v. McLane Foodservice, Inc.,* 2016 WL 4797497, *5 (E.D. Cal. Sep. 13, 2016).

There also would be considerable delay and costs if the settlement is not approved. First, the parties would need to complete a significant amount of discovery to ready the case for trial, including depositions outside California. Settlement avoids those costs. *Linney,* 151 F.3d at 1242. ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."). Second, a new notice would have to be sent to the 6,950 potential opt-ins to the collective to ask them whether they want to join the action if it is proceeding to trial. That would be expensive. It would also cause several months of delay for the administration of that process. Once the opt-ins are determined that may give rise to another round of discovery. *Chavez v. WIS Holdings Corp.*, 2013 WL 2181214, *2 (S.D. Cal. May 20, 2013) ("This court is of the opinion that a party who has chosen to opt-in to a collective action has an obligation to participate in the litigation, if necessary.") Settlement wisely avoids these costs and delays.

Further, this risk, delay and burden are contrary to the interests of the class/collective. Fidelity has already agreed to pay more than the potential damages and it has agreed to change its practices. These benefits will be lost if the case proceeds to trial and Plaintiff loses. The choice then, is approve this settlement so that the class/collective members receive at least seventy-six cents on the dollar now, or await a trial, with considerable risk, that may occur in 2020, with

appeals to likely follow. *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 966 (9th Cir. 2009)

("Inevitable appeals would likely prolong the litigation, and any recovery by class members, for

years. This factor, too, favors the settlement."). "A settlement is fair, adequate, and reasonable

when the interests of the class are better served by settlement than by further litigation." *Garner v.*

*State Farm Mut. Auto Ins. Co.,* 2010 WL 1687832, *8 (N.D. Cal. Apr. 22, 2010).  Those

sentiments direct the Court to approve the settlement here.

**The effectiveness of the proposed method of distributing relief to the class is high.**

As an initial consideration, the settlement is non-reversionary. *E.g., Minor v. FedEx Office*

*and Print Services, Inc.*, 2013 WL 503268, *4 (N.D. Cal. Feb. 8, 2013) ("reversionary clauses

often raise concerns about whether the settlement is in the best interests of the class.")

Second, the Settlement Agreement requires extensive efforts to get class/collective

members to cash their settlement checks.  After going through the address updating procedures in

connection with sending the Notices, the Claims Administrator will send the checks and it will

follow up with a postcard reminder to anyone who has not cashed their checks after 30 days.  After

60 days the Administrator will then issue and distribute new checks for anyone who did not cash

the first check.  This second check will also remain live for 60 days.  (SA ¶ 2.6.3.)  If, after all that,

a class/collective member still has not cashed his or her check, the Claims Administrator and

Fidelity will re-distribute the funds from any uncashed checks pro rata to currently employed

Class/Collective members through its payroll system.  Once this process is complete, Fidelity will

provide Class Counsel a declaration confirming that such distribution took place pursuant to the

Settlement's terms.  (*Id.*)

This factor is met because the Settlement Agreement does everything possible to put the

settlement funds into the hands of the class/collective members.

**The terms of the proposed award of attorney's fees favor final approval here.**

Class counsel has requested the 25% benchmark in the Ninth Circuit, or $300,000, although

courts often award higher amounts in wage and hour litigation like this. *Hanlon v. Chrysler Corp.,*

150 F.3d 1011, 1029 (9th Cir. 1998); *Cicero v. DirecTV, Inc*., 2010 WL 2991486,  *6 (C.D. Cal.

July 27, 2010) ("courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fund under $10 million."). Class counsel has billed more than 448 hours on this case to date. (Baker Decl. ¶ 9.) Class counsel's current lodestar based on these hours is $289,102, so its request for $300,000 in fees requires essentially no multiplier (1.04) even though multipliers up to "four are frequently awarded in common fund cases…" *Lazarin v. Pro Unlimited, Inc.*, 2013 WL 3541217, *8 (N.D. Cal. July 11, 2013). And, there will, of course, still be more work on this case. Thus, Class Counsel's lodestar will soon exceed the requested fees. Moreover, the parties did not agree to the amount of fees awarded; it is left to the Court's discretion. This too favors final approval. Advisory Committee Notes ("Particular attention might focus on the treatment of any award of attorney's fees, with respect to both the manner of negotiating the fee award and its terms.").

### The proposal treats class members equitably relative to each other.

As the Court stated in its Preliminary Approval Order (Dkt. 70, 3:16-27):

> The net settlement fund will be divided into a portion for the class and a portion for the collective. California class members who were still employed by Fidelity at the end of the class period will receive ten percent more than the FLSA collective members and members of the "former employee subclass," which includes members of the California class who were no longer employed by Fidelity at the end of the class period, will receive twelve percent more than the FLSA collective members. This takes into account the higher value of claims released by the class and subclass. Each class member gets a pro rata share of the class portion and each collective member gets a pro rata share of the collective portion. The pro rata distribution will be based on the actual amount of unpaid wages each class and collective member would receive if plaintiff established her claims at trial.

This distribution plan results in collective members recovering an estimated seventy-one percent (71%) of their potential compensatory damages, class members recovering seventy-eight percent (78%) of their potential compensatory damages, and former-employee subclass members recovering eighty percent (80%) of their potential compensatory damages. Class members get ten percent more than FLSA collective members under the settlement because the potential violations of Labor Code section 226 have a higher value (up to $4,000 per employee) than the potential for liquidated damages under the FLSA for collective members. Class members also release claims

1   and rights under PAGA.  The former employee sub-class receives two percent more than the other

2   class members because it is the only group to allege a claim under Labor Code section 203, which

3   could result in penalties up to 30 days' wages.  (Baker Decl. ¶ 8.)   Accordingly, this is not a case

4   of "singling out a large group of non-named plaintiff class members for higher payments without

5   regard to the strength of their claims."  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).

6   Rather, the parties valued the different claims and ensured that class members receive settlements

7   consistent with that value.  *In re Global Crossing Securities and ERISA Litigation*, 225 F.R.D.

8   436, 461 (S.D.N.Y. 2004) ("When formulated by competent and experienced class counsel, an

9   allocation plan need have only a reasonable, rational basis. . . .").

10      The substantive factors therefore also support final approval.  Final approval of the class

11   settlement should be granted.

12      **C.      The FLSA Settlement and Release Is Fair and Reasonable**

13      A proposed FLSA settlement must be "a fair and reasonable resolution of a bona fide

14   dispute over FLSA provisions." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527–30

15   (2013). As discussed above, and in the preliminary approval motion, the parties have a bona fide

16   dispute regarding overtime wages, and the settlement represents a reasonable compromise of those

17   claims.  Indeed, the above showing that supports approval of the class settlement establishes that

18   the FLSA settlement should also be approved.  *Millan v. Cascade Water Services, Inc*., 2016 WL

19   3077710, *3 (E.D. Cal. May 31, 2016) ("many courts begin with the well-established criteria for

20   assessing whether a class action settlement is fair, reasonable and adequate under [Rule] 23(e) and

21   reason by analogy to the FLSA context."); *Otey v. CrowdFlower, Inc.*, 2014 WL 1477630, *11

22   (N.D. Cal. Apr. 15, 2014) ("[T]he factors that courts consider when evaluating a collective action

23   settlement are essentially the same as those that courts consider when evaluating a Rule 23

24   settlement.").  This settlement also meets the standard in the Northern District of approving FLSA

25   settlements as reasonable when they recover 70% or more of the alleged damages.  *Slavkov v. Fast*

26   *Water Heater Partners I, LP*, 2017 WL 3834873, *1 (N.D. Cal. July 25, 2017); *Lee v. The*

27   *Timberland Co.,* 2008 WL 2492295, *2 (N.D. Cal. June 19, 2008) (70% of FLSA damages).

28

Finally, although members of the FLSA collective do not have a statutory right to object to the settlement, the parties' revised notice procedure allows the Court to take into consideration any concerns raised by members of the collective.  No such concerns have been raised.  (Baker Decl., ¶3, ¶4; Ex. 1 at ¶¶ 13-14.)

Final approval of the FLSA settlement should also be granted.

## VI.    CONCLUSION

For all of the reasons set forth above, Plaintiff respectfully requests that the Court issue an order finally approving the settlement in this case.  Plaintiff submits a proposed order and a proposed judgment that were attached to the Amended Settlement Agreement as Exhibits 6 and 7.


DATED:  July 24, 2019                          BAKER CURTIS & SCHWARTZ, P.C.


                                        By:   /s/ Chris Baker
                                               Chris Baker
                                               Mike Curtis
                                               Attorneys for Plaintiff
                                               ADRIAN MORRIS

MOTION FOR FINAL APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT